IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
November 02, 2023 01:53 PM
SX-2022-MC-00037
TAMARA CHARLES
CLERK OF THE COURT



# SUPERIOR COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

IN RE: LIMETREE BAY COMMERCIAL
LITIGATION CASES.

Master Case No. SX-2022-MC-00037
Complex Litigation Division

Cite as: 2023 VI Super 65

**Appearances:**

**DONNIE M. KING, ESQ.**
Akerman LLP
Fort Lauderdale, FL 33301
*For Plaintiff Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals* (in Case No. SX-2022-CV-00227)

**EARNESTA L. TAYLOR, ESQ.**
**ROBERT J. KUCZYNSKI, ESQ.**
Beckstedt & Kuczynski LLP
Christiansted, VI 00820
*For Plaintiff Limetree Bay Refining, LLC* (in Case Nos. SX-2022-CV-00233, SX-2022-CV-00234, SX-2022-CV-00235, SX-2022-CV-00236, SX-2022-CV-00237, SX-2022-CV-00238, SX-2022-CV-00239,§ SX-2022-CV-00242, SX-2022-CV-00244, SX-2022-CV-00271)

**CARL A. BECKSTEDT, III, ESQ.**
Beckstedt & Kuczynski LLP
Christiansted, VI 00820
*For Defendant Limetree Bay Refining, LLC* (in Case Nos. SX-2021-CV-00530, SX-2021-CV-00597, SX-2021-CV-00598, SX-2021-CV-00711, SX-2021-CV-00735, and SX-2021-CV-00793)

**ANDREW C. SIMPSON, ESQ.**
Andrew C. Simpson, P.C.
Christiansted, VI 000820
*For Defendant Port Hamilton Refining & Transportation, LLLP* (in Case Nos. SX-2022-CV-00224 and SX-2022-CV-00227) and *Proposed Substitute Defendant* (in Case Nos. SX-2022-CV-00233, SX-2022-CV-00234, SX-2022-CV-00235, SX-2022-CV-00236, SX-2022-CV-00237, SX-2022-CV-00238, SX-2022-CV-00242, SX-2022-CV-00244, and SX-2022-CV-00271). *For Defendants Sloan Schoyer* (in Case No. SX-2022-CV-00233), *Fermin Rodriguez* (in Case No. SX-2022-CV-00234), *Curtis Green* (in Case No. SX-2022-CV-00235), *Shay Glasgow* (in Case No. SX-2022-CV-00236), *Fred Flint* (in Case No. SX-2022-CV-00237), *Robert Craig* (in Case No. SX-2022-CV-00238), *Coral Megahy* (in Case No. SX-2022-CV-00242), *Neil Morgan* (in Case No. SX-2022-CV-00244), *and Donna Ashley* (in Case No. SX-2022-CV-00271)

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 2 of 16

2023 VI Super 65

**RYAN C. STUTZMAN, ESQ.**
CSA Associates, P.C.
Christiansted, V.I. 00820
*For Defendant West Indies Petroleum, Ltd.* (in Case No. SX-2022-CV-00227)

**CHARLES E. LOCKWOOD, ESQ.**
**GREGG R. KRONENBERGER, ESQ.**
**SEAN P. BAILEY, ESQ.**
Dudley Newman Feuerzeig, LLP
Christiansted, VI 00820
*For Defendant Excel Construction & Maintenance VI, Inc.* (in Case No. SX-2022-CV-00227)

**DYCA C. TRICOCHE, ESQ.**
Frederiksted VI, 00841
*For Defendant West Indies Petroleum USVI, Ltd.* (in Case No. SX-2022-CV-00227)

## MEMORANDUM OPINION

**WILLOCKS, Administrative Judge.**

¶1 **BEFORE THE COURT** is a recommendation of the Staff Master and responses thereto. Limetree Bay Terminals d/b/a Ocean Point Terminals (hereinafter "LBT" or "Ocean Point") filed multiple forcible entry and detainer (hereinafter "FED") actions to evict employees of Port Hamilton Transportation & Refining, LLLP (hereinafter "Port Hamilton"). The FED Defendants answered Ocean Point's complaints and counter-designated the FED Actions as complex. Port Hamilton also moved to substitute itself into each FED Action as the true landlord. Port Hamilton and the FED Defendants then asserted that Ocean Point previously filed a prior action, which is still pending, that involves similar issues as those raised in the FED Actions. Ocean Point and Port Hamilton had agreed to share certain services as co-owners of the St. Croix oil refinery complex. Providing housing for Port Hamilton's employees was one of the services Ocean Point agreed to provide. The Staff Master concluded that the FED Actions were straightforward eviction cases, since no one disputed that Ocean Point is the landowner, and recommended striking the complex counter-designations from the answers and returning FED Actions to the Magistrate Division for

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 3 of 16

2023 VI Super 65

further proceedings. Ocean Point agreed. Port Hamilton and the FED Defendants objected. After the Staff Master issued his recommendation, Port Hamilton advised, in response to a request for an update, that Ocean Point had accepted payment from Port Hamilton, which mooted the FED Actions. Ocean Point disagreed but then moved to amend its complaints in the FED Actions to "reset" them after it had accepted payment. This Court heard oral argument on the objections to the Staff Master's recommendation. For the reasons given below, the Staff Master's recommendation will be rejected, and the FED Actions will be dismissed without prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

¶2    In a Memorandum Opinion and Order issued concurrently with this Opinion, the Court detailed the overall background of the cases grouped under this master case, all of which relate in one way or another to the successive bankruptcy sales of the former oil refinery on the south shore of St. Croix. That background is incorporated herein and will not be repeated. *See generally In re: Limetree Bay Comm. Litig. Cases*, 2023 VI Super 66, ¶¶ 2-8. What is relevant here, however, is the recent history after Limetree Bay Refining, LLC (hereinafter "LBR"), Limetree Bay Refining Operating, LLC (hereinafter "LBRO") (collectively "Limetree"), and several affiliates filed for bankruptcy.

¶3    Limetree acquired the oil refinery business after HOVENSA, LLC filed for bankruptcy in 2015. Ocean Point acquired the oil storage business through the same HOVENSA bankruptcy case. Six years later, Limetree also filed for bankruptcy. Ocean Point did not. Although, colloquially, everyone referred to the 2,000 acre industrial complex on St. Croix's south shore as the "Limetree Bay" refinery, the "refinery" actually comprises two different operations. The oil refinery business was owned and operated by LBR and LBRO, while the oil storage business was owned and operated by LBT. Before HOVENSA filed for bankruptcy, the entire complex was owned and operated by one company: HOVENSA, from 1998 to 2015, and Hess Oil Virgin Islands Corporation, from 1967 to 1998. After HOVENSA filed for

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 4 of 16

2023 VI Super 65

bankruptcy, two companies owned and operated the complex. It also meant that certain services had to be shared between them.

¶4      In November 2018, LBT and LBR agreed to divide up responsibility for "approximately thirty different services . . . ." (Second Amend. Compl. ¶ 20, filed Mar.30, 2023, *Limetree Bay Terminals, LLC v. Port Hamilton Transp. & Refining, LLLP, et al.*, Case No. SX-2022-CV-00227.) Included among those services were "power generation, wastewater treatment, lab facilities, and administration buildings . . . ." *Id.* ¶ 19. Other services included telephone and internet access, security personnel, water supply, and fire safety and emergency response services. *See generally id.* at Ex. F. However, after Limetree filed for bankruptcy, and its assets were acquired by Port Hamilton, Port Hamilton did not "assume[] LBR's Shared Services Agreement . . . [or] negotiate a new agreement . . . [with Ocean Point]." *Id.* ¶ 44. Instead, Port Hamilton tried to go it alone.[1] *See id.* ¶ 46 ("WIPL, Excel, and Port Hamilton initially attempted, unsuccessfully, to operate the Refinery themselves.").

¶5      Eventually, however, Port Hamilton did enter into a short-term letter agreement with Ocean Point to share services. The agreement took effect on January 23, 2022, and was extended and amended through March 21, 2022. Ocean Point agreed to provide Port Hamilton with the same services it provided to Limetree. Ocean Point also agreed to supply fuel to the refinery. And relevant here, Ocean Point agreed to let Port Hamilton rent cottages for Port Hamilton's employees and contractors. *See id.* at Ex. F, p. A-18. Port Hamilton fell behind on its share of the payments and Ocean Point served a demand for payment on April 1, 2022, warning that if payments did not resume, Ocean Point would stop providing the shared

---

[1] Ocean Point alleges that Port Hamilton acted, at all times, at the direction of WIPL. *See generally id.* ¶ 11. And Port Hamilton and WIPL jointly purchased LBR's assets in the Limetree bankruptcy case. *See id.* ¶ 41 ("The sale of the Refinery closed on January 21, 2022, and assets formerly belonging to Limetree Bay Refinery now belong to WIPL and Port Hamilton."); *see also United States v. Limetree Bay Ref., LLC*, No. 1:21-cv-00264-WAL-EAH, 2022 U.S. Dist. LEXIS 245380, at *2 (D.V.I. Nov. 17, 2022) ("WIPL and PHRT purchased all or substantially all of Defendant Limetree Bay Refining LLC's assets following Limetree filing for Chapter 11 relief in bankruptcy court in late 2021-early 2022 . . . ."). For purpose of this Opinion, WIPL's involvement is not relevant. So, the Court refers to Port Hamilton as the current owner and operator of the oil refinery business.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 5 of 16

2023 VI Super 65

services. Ocean Point continued to provide the services to Port Hamilton in spite of the arrears because, according to Ocean Point, some services had to be provided "to maintain safe operations . . . ." *Id.* ¶ 68.

¶6      On June 22, 2022, Ocean Point sued Port Hamilton for breach of contract, debt, and unjust enrichment. This case has been and will be referred to throughout as the Shared Services Case. Approximately a week later, on June 28, 2022, Ocean Point filed eight more cases, all FED actions, followed by a ninth case, on June 29, 2022, and a tenth case on July 26, 2022, both FED actions as well. These eviction cases have been and will be referred to throughout as the FED Actions.[2] Counsel for the FED Defendants entered an appearance in the majority of FED Actions in July 2022, answered the complaints and counter-designated the cases as complex. Port Hamilton simultaneously appeared through the same attorney and filed motions to substitute itself in place of the FED Defendants. Port Hamilton also filed its answer in the Shared Services Case around the same time, and counter-designated that case as complex. In their answers, the FED Defendants alleged that there was no landlord / tenant relationship between them and Ocean Point and further, that the issues raised in the FED Actions are the subject of the pending Shared Services Case. (*See, e.g.*, Answer 2, filed July 21, 2022, *Limetree Bay Terminals, LLC v. Sloan Schoyer*, Case No. SX-2022-CV-00233 ("The issues raised in this lawsuit are the subject of prior litigation, still pending, in this Court under the caption 'Limetree Bay Terminals, LLC v. Port Hamilton Refining & Transportation, LLLP" and Case No. SX-2022-CV-00227.").)

¶7      The counter-designations by the FED Defendants and Port Hamilton prompted the Clerk's Office to bring the Shared Services Case and the FED Actions to this Court's attention in its former administrative capacity as Presiding Judge. *See* 4 V.I.C. § 72b(a) (vesting responsibility for managing the caseloads of

---

[2] Limetree Bay Terminals, LLC commenced he Shared Services Case and the FED Actions. The Court takes judicial notice that Limetree Bay Terminals, LLC is now doing business as Ocean Point Terminals. However, to avoid confusion with "Limetree" being used to refer to LBR and LBRO, the Court refers to Ocean Point as the plaintiff even though, technically, Limetree Bay Terminals, LLC is the plaintiff in the Shared Services Case and the FED Actions.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 6 of 16

2023 VI Super 65

the judges in the presiding judge). The Court then undertook a review of all cases filed by or against a Limetree entity, i.e., LBR, LBRO, and LBT. Twenty-nine cases were identified, of which seven involved personal injury or employment-related claims. They were excluded as being sufficiently different from the others. The remaining twenty-two cases included the ten FED Actions, the Shared Services Case, ten cases brought by contractors seeking to foreclose on construction liens, which have been referred to as the Construction Lien Cases, and a lawsuit against LBT involving a letter of credit. The Court tentatively concluded that all the cases might benefit from coordination before the same judge in the Complex Litigation Division since they stemmed, at least partly, from issues related to the Limetree bankruptcy. The Court then opened a master case, grouped all twenty-two cases under it, tentatively designated them as complex, and directed the Clerk's Office to reassign the cases to this Court's docket. The Court also set a deadline for the parties to respond to whether complex treatment was warranted and referred this matter to the Staff Master to issue a recommendation regarding complex treatment or, if no one objected, to proceed with a case management conference.

¶8      Except for the plaintiff in the Letter of Credit Case, only Ocean Point (LBT) objected, both as defendant in the Construction Lien Cases and as plaintiff in FED Actions and the Shared Services Case. Port Hamilton and the FED Defendants disagreed with Ocean Point's objections to complex treatment. So, the Staff Master heard arguments from the parties and issued several recommendations. The first recommendation was to strike the counter-designations from the FED Defendants' answers and deny Port Hamilton's motions to substitute. Since the FED Defendants had admitted in their answers that Ocean Point owned the cottages, the Staff Master concluded there was no complicated question of ownership, so the FED Actions should be transferred back to the Magistrate Division for further proceedings. The Staff Master did not, initially, address whether the Shared Services Case should be complex because "Ocean Point and Port Hamilton had agreed during oral argument that the outcome should be the same for the

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 7 of 16

2023 VI Super 65

FED Actions and the Shared Services Case with respect to complex treatment . . . ." *In re: Limetree Bay Comm. Litig. Cases*, 2023 VI Super ___ at ¶ 12 (citation and brackets omitted). However, once Ocean Point was granted leave to amend its complaint in the Shared Services Case, and when the amendments included a request to foreclose on a construction lien against on the same parcels of land as those at issue in Construction Lien Cases, the Staff Master issued a third recommendation, amending the first recommendation in part, to recommend that Ocean Point's objections to complex treatment be overruled and the Shared Services Case remain complex and be coordinated with the Construction Lien Cases.

¶9    The Court scheduled argument on the objections to the Staff Master's recommendation and also directed the parties to come prepared to proceed with a bench trial in the FED Actions, either before this Court if complex treatment was warranted, or before a magistrate judge in the Magistrate Division if complex treatment was not warranted. To reduce further delay, the Court also directed the parties to come prepared to respond in person to the Staff Master's third recommendation, whether by objection or motion to adopt, modify, or reject. *Cf.* V.I. R. Civ. P. 53(f)(1) ("In acting on a master's . . . recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."). Finally, the Court ordered the parties to provide an update if the posture of any case had changed and would impact the hearing, for example, "if the FED Actions have become moot because one or more tenants have vacated the premises." (Order 3, entered Feb. 14, 2023.)

¶10    Ocean Point and Port Hamilton responded. Ocean Point advised that it and Port Hamilton had "signed a new Shared Services Agreement . . . that includes PHRT's use of OPT's houses, including the houses occupied by the [FED] Defendants." (Notice to Ct. 2, filed Feb. 22, 2023.[3]) However, "the New

---

[3] Unless noted, all citations are to documents filed in the master case.

Agreement terminated" on February 13, 2023, Ocean Point explained, and the FED Defendants "no longer have a right to occupy the premises." *Id.* Port Hamilton also advised the Court of the new agreement but then claimed "that the notices to quit that serve as the foundation for the pending FED [A]ctions are voided both by the acceptance of payments and by the fact that the tenants are currently occupying the property under a different agreement. Consequently, there is no basis for the instant FED [A]ctions to continue." (Notice in Compliance with Ct's Feb. 14, 2023 Order 2, filed Feb. 22, 2023 (hereinafter "PHRT Notice").) Ocean Point responded to Port Hamilton's assertion by serving new notices to quit on most of the FED Defendants and by moving to amend its complaints, which the FED Defendants opposed. After hearing arguments from the parties, including objections to the third recommendation, the Court took the matter under advisement.

## II.    DISCUSSION

¶11    Judges reviewing the recommendation of the staff master "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." V.I. R. Civ. P. 53(f)(1). Legal conclusions are reviewed *de novo*. V.I. R. Civ. P. 53(f)(4). Factual findings that are objected to are also reviewed *de novo* except when the parties, with court approval, stipulate to clear error review or stipulate that the staff master's findings will be final. V.I. R. Civ. P. 53(f)(3). The question raised here is whether to adopt the recommendation to deny Port Hamilton's motions to substitute, to strike the complex counter-designation from the answers in the FED Actions, and to return the FED Actions to the Magistrate Division. Here, no one objected to the Staff Master's findings. Further, even though the Staff Master did give a detailed factual background in his recommendations, he did not find facts as such. Therefore, the Court concludes that its review here is *de novo* and limited primarily of questions of law.

¶12    The Court agrees with the Staff Master that "[i]n each of the FED actions, LBT alleges that it is the owner of the real property at issue[, a]nd in each answer, the defendant admitted that he or she is in

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 9 of 16

2023 VI Super 65

possession of the property and is not the title owner." (Recommend. 11, entered Sept. 13, 2022 (citations omitted).) The Staff Master was also correct that Port Hamilton "is not the landlord, not in the sense used in FED actions." *Id.* The Court further agrees that, if an "owner proves that it is entitled to possession, has given notice, and the person or entity in possession has not vacated within thirty days—an action for forcible entry and detainer will lie." *Id.* at 12 (citing 28 V.I.C. § 783). But the Court disagrees that an action for forcible entry and detainer lies here.

¶13    "FED actions are governed by [T]itle 28, [S]ections 751 through 794 of the Virgin Islands Code. These sections provide for summary adjudication of a limited class of simple eviction proceedings." *V.I. Port Auth. v. Joseph*, 49 V.I. 424, 427 (2008) (*per curiam*). As the Supreme Court of the Virgin Islands explained in *Joseph*, the FED action is "a peaceful alternative to the often violent consequences of property owners exercising their right of self-help." *Id.* at 427 (quoting *C.M.L., Inc. v. Dunagan*, 904 F.2d 189, 190 (3d Cir. 1990)). "[T]he statute provides a simple summary proceeding, with time requirements substantially shorter than those provided in ordinary civil actions and with the issues sharply restricted." *Id.* (quoting *Dunagan*, 904 F.2d at 190). "In such a summary proceeding, a property owner *under certain specified circumstances*, can quickly receive a judicial declaration of his right of occupancy and an order directing the marshal to remove the defendant and restore possession to the property owner." *Id.* (emphasis added) (quoting *Dunagan*, 904 F.2d at 190).

¶14    Defenses can be asserted in an FED action, of course, *see id.* at 429-31, and a defense does not have to be based on a written lease. *See id.* at 430 ("[W]e disagree with VIPA that a bona fide defense to an FED complaint must be based on the interpretation of a written lease."). Furthermore, a court's authority to provide relief in an FED action is not "ousted by a mere averment in a defendant's pleading, statement or argument, of ownership of the land, or that a question of title, legal or equitable, is involved." *Id.* at 430-31 (brackets omitted) (quoting *Dunagan*, 904 F.2d at 191). Instead, the trial court must "proceed

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 10 of 16

2023 VI Super 65

until it appears that the question involved is in fact one of title or a complicated case of the right to possession." *Id.* at 431 (quoting *Dunagan*, 904 F.2d at 191). These cases clearly involve complicated questions about the right to possession.

¶15     First, there is no lease, whether oral or written, between the FED Defendants and Ocean Point, a point counsel for Ocean Point conceded during oral argument. Ocean Point countered that a lease is not needed in FED actions. That is correct, but it does not help Ocean Point. Section 782(a) of Title 28 of the Virgin Islands Code provides, that "[w]hen a forcible entry is made upon any premises, or when an entry is made in a peaceable manner and the possession is held by force, the person entitled to the premises may maintain an action to recover the possession thereof." Two scenarios are contemplated by the statute. First, a person or an organization is given permission to use another's property, i.e., "entry is made in a peaceable manner," and that person or company refuses to vacate, i.e., "and the possession is held by force." Second, an individual, such as a squatter or a trespasser, enters another's land without permission, i.e., "a forcible entry is made upon [the] premises." A lease, whether oral or written, clearly is not required to evict a squatter or someone who entered another's land and remains there after being asked to leave. But when one person obtains possession of another person's land "in a peaceable manner," that person can only be evicted if he or she retains "possession . . . . by force." 28 V.I.C. § 782(a). Force, in this context, means the lease has expired, notice to quit has been given, and the person or entity in possession refuses to leave.

¶16     As the Virgin Islands Supreme Court explained in *Joseph*: "Where a tenant is retaining possession by force, relief is available in a summary FED proceeding *only if* there is an *undisputed* oral or written lease agreement, and rent is due and owing thereon; or there is an undisputed oral or written lease which has expired." *Joseph*, 49 V.I. at 428-29 (brackets and internal quotation marks omitted) (quoting *Dunagan*, 904 F.2d at 191). Ocean Point conceded that there are no leases in force here, not between Ocean Point and Port Hamilton or between Ocean Point and the FED Defendants. Ergo, these are not FED actions.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 11 of 16

2023 VI Super 65

And *Joseph* makes clear that an FED action is proper only if there was a lease that expired that is not in dispute, regardless of whether the lease was oral or in writing. Of course, all agreements to rent for a period longer than a year should be in writing. *See* 28 V.I.C. § 241. But here, Ocean Point admitted there never were any lease agreements between it and any FED Defendant. Instead, there was an agreement, renewed and extended from time to time, between Port Hamilton and Ocean Point on how to share services and responsibilities that come with operating the 2,000 acre refinery complex. This agreement is the basis of the FED Actions Ocean Point filed.

¶17 Second, and more importantly, all FED Defendants alleged as an affirmative defense in their answers that the issues raised were the subject of prior litigation, still pending, in the Superior Court. "As soon as a defendant in possession in an FED action raises a colorable defense requiring construction of an agreement between the property owner and the party in possession, an FED action will not lie." *Estate of Thomas Mall, Inc. v. Terr. Ct. of V.I.*, 923 F.2d 258, 264 (3d Cir. 1991). The FED Defendants clearly raise a colorable defense requiring the construction of an agreement, the various letter agreements between Ocean Point and Port Hamilton to share certain services, including the cottages. The Staff Master acknowledged this issue when, in his recommendation, he detailed the historical background as explained by Port Hamilton. (*See* Recommend. 9, entered Sept. 13, 2022 ("Several years ago, the parent company opted to sever the combined refinery/terminal into two separate companies . . . . But, there was no way to make a 'clean break' between the two facilities because some of the assets owned by one are also needed by the other and vice-versa. For example, Port Hamilton . . . owns the fire trucks that LBT relies upon to provide fire protection in the event of a fire at the terminal facility whereas LBT owns the housing located in Estates Cottage and Blessing that PHRT uses to house seven employees.'" (quoting Port Hamilton Refining & Transp., LLLP's Resp. to Limetree Bay Terminals, LLC's Opp'n to Complex Designation 2, filed Aug. 23, 2022)).) Clearly, the scope of these agreements, and the need for Port Hamilton, on the one

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 12 of 16

2023 VI Super 65

hand, after stepped into LBR's shoes following the bankruptcy sale, and LBT (now Ocean Point), on the other hand, the need for them to figure out some way to "coexist" within the same refinery complex – this issue is the subject of another lawsuit pending in the Superior Court, the Shared Services Case that Ocean Point filed for breach of contract, debt, and unjust enrichment.

¶18    One of the services Ocean Point agreed to provide to Port Hamilton is use of Ocean Pont's cottages for Port Hamilton's employees and contractors. The FED Defendants submitted a copy of a January 10, 2022 letter agreement between Ocean Point and Port Hamilton as an exhibit during the hearing. That agreement states that, "[u]pon request of Port Hamilton, OPT, in its sole discretion, may make housing in Estate Blessing or Estate Cottage ("Cottages") available for the use of employees of Port Hamilton or contractors working exclusively for Port Hamilton." (FED Defs.' Ex. 1, P. A-18.) The agreement also states that

> Port Hamilton will pay OPT rent for Cottages in the amount of $4,500 per month, per cottage, inclusive of utility services. Port Hamilton will ensure that its employees or contractors housed in Cottages vacate each rented cottage upon the earlier of: (i) 30 days following written request by OPT; (ii) a person no longer being employed or retained as a contractor by Port Hamilton; or (iii) termination of this Letter Agreement. As set forth more fully elsewhere in this Letter Agreement, Port Hamilton shall indemnify, defend, and hold OPT harmless for any and all damages or claims arising from Port Hamilton employees or contractors occupying Cottages.

> Within thirty (30) days of execution of this Letter Agreement, Port Hamilton shall execute a master lease agreement, in a form acceptable to both Parties. In addition, each person occupying a cottage shall be required to execute OPT's Housing Agreement. Execution of the aforementioned lease and Housing Agreement, and payment of the required security deposit, shall be required before occupation of any additional cottages. For the avoidance of doubt, Port Hamilton shall be responsible for fees and attributable to cottages already occupied by Port Hamilton personnel, inclusive of contractors and invitees.

> Should the Parties be unable to agree on the form of a master lease and OPT Housing Agreement within thirty (30) days of execution of this Letter Agreement, Port Hamilton shall vacate, and cause its employees, contractors and invitees to vacate, all Cottages until such time as the Parties can reach agreement on the form of such documents. *Id.* at A-18-A-19.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 13 of 16

2023 VI Super 65

Ocean Point attached a copy of this same agreement to its Second Amended Complaint in the Shared Services Case. A similar agreement, dated January 23, 2022, also between Ocean Point and Port Hamilton, was also attached to the initial Complaint filed in the Shared Services Case. While neither agreement appears to have been brought to the attention of the Staff Master, even if they had been, the agreements do not show any lease, as such, between the FED Defendants and Ocean Point. Thus, the Staff Master was mistaken in concluding that Ocean Point could maintain an FED action against Port Hamilton's employees.

¶19    Even if Ocean Point could maintain an FED action, Ocean Point admitted—by filing motions to amend its complaints in the FED Actions—that whatever agreement it had with Port Hamilton that justified serving notices to quit on the FED Defendants had expired, been renewed, and expired again. (*See, e.g.*, Pl.'s Mot. for Leave to File a First Am. Compl. 1, filed Mar. 1, 2023, *Limetree Bay Terminals, LLC v. Schoyer*, Case No. SX-2022-CV-00233 ("The impetus for initially pursuing an FED Action and filing the Complaint against Defendant was the result of the April 6, 2022 termination of an agreement under which Defendant obtained possession of OPT's Property. During the pendency of the matter, on or about January 10, 2023, a new agreement temporarily gave Defendant lawful occupancy of OPT's Property, but by February 13, 2023, OPT terminated the new agreement." (footnotes omitted)).[4]) Port Hamilton and the FED defendants oppose the motion to amend in part because they contend that the new agreement between Port Hamilton and Ocean Point nullified the initial basis for the FED Actions. (*See* PHRT Notice at 2 ("It is PHRT's position that the notices to quit that serve as the foundation for the pending FED actions are voided both by the acceptance of payments and by the fact that the tenants are

---

[4] Ocean Point referred to the letter agreement as having been entered into on January 10, 2023, whereas the copy submitted in court and the copy attached to the second amended complaint in Case No. SX-2022-CV-00227, all say January 10, 2022. The year could be a scrivener's error, in which case it clearly could not have been considered by the Staff Master as his recommendations regarding the FED Actions issued several months earlier.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 14 of 16

2023 VI Super 65

currently occupying the property under a different agreement.").) The Court agrees.

¶20    Accepting rent gives rise to a tenancy at will and requires notice "'equal to the interval between the times of payment.'" *Schwartz v. Bobby's Int'l, Inc.*, 27 V.I. 9, 13 (Terr. Ct. 1991) (quoting 29 V.I.C. § 752). And failure to comply with the statutory notice requires dismissal. *See, e.g., Gov't of the V.I. v. Beaufond*, No. ST-09-CV-161, 2009 V.I. LEXIS 87, *6-7 (V.I. Super. Ct. Sep. 3, 2009) ("After the Notice to Vacate was issued in this case, the Government continued to accept rent . . . . As in *Bobby's International*, 27 V.I. at 15, the acceptance of the rent after the Notice to Vacate gave rise to a new tenancy at will, and the Government was obligated to send out a new notice to vacate which specified a time 'equal to the interval between the times of payment,' namely 30 days. Since the Government did not do that . . . the instant action must be dismissed without prejudice." (citation omitted)). Having filed multiple FED Actions and then accepted payment under the letter agreements and entering into a new agreement that also expired, while seeking to amend the complaints in an attempt to reset FED Actions – that is not how summary proceedings operate.

¶21    Perhaps more importantly, however, the right to possession at issue in the FED Actions is already being litigated in the Shared Services Case and that case was filed first. Under the prior action pending doctrine, the Shared Services Case, having been filed before the FED Actions were filed, should proceed first. *Cf. Kuykendall v. Hart*, 70 V.I. 528, 543 (Super. Ct. 2019) ("[T]he soundest rule for the Virgin Islands is to adopt the prior action pending doctrine, a 'common sense rule, which provides that as between two judges with jurisdiction, the judge which first has possession of the subject must decide it.'" (quoting *Bell v. Lee J. Rohn & Assocs., LLC*, No. ST-14-CV-585, 2015 V.I. LEXIS 89, *4 (V.I. Super. Ct. July 8, 2015)). Ocean Point did raise concerns during oral argument about the delay that might come from having to resolve issues related to the cottages in the Shared Services Case. But Ocean Point can always seek expedited resolution of that issue. *Cf.* V.I. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 15 of 16

2023 VI Super 65

*expedite* and economize, the court may order a separate trial of one or more separate issues . . . ." (emphasis added)). However, "two judges in the same judiciary should not preside over parallel litigations of the same dispute simultaneously.'" *Kuykendall*, 70 V.I. at 549 (citation omitted)). To the extent the Second Amended Complaint in the Shared Services Case does not adequately encompass a claim for restoration of property, the Court will grant Ocean Point leave to amend.

¶22    Finally, since the Court will dismiss the FED Actions, the Court does not need to decide whether the FED Actions should remain complex or whether Port Hamilton should be allowed to substitute. To be sure, "eviction proceedings and landlord-tenant actions can be designated as complex." (Order 4, entered July 27, 2022.) *Accord* V.I. R. Civ. P. 92(a) ("A complex case is a *civil action or proceeding* that requires exceptional judicial management . . . ."). But here, deciding whether the FED Actions should continue within the Complex Litigation Division is moot.[5] Deciding whether to allow Port Hamilton to substitute into the FED Actions is also moot for the same reason. *Cf. Der Weer v. Hess Oil V.I. Corp.*, 60 V.I. 91, 99 (Super. Ct. 2014) (explaining that something is moot when a decision will have no practical impact however it is decided). Contrary to what Port Hamilton and the FED Defendants contend, management within the Complex Litigation Division does not eliminate the need for appeals to be filed with the Appellate Division of the Superior Court. (*Cf.* Port Hamilton Br. 5 ("By handling these cases under the Complex Litigation designation, they can all be managed as one, by one judge, and with only one outcome and without appeals from the Magistrate Court." (parentheses omitted)).) "Forcible entry and detainer actions and landlord and tenant actions are two separate type[s] of actions" which "the Legislature intended to grant the Magistrate Division the jurisdiction and power over . . . ." *Strand Square, LLC v. Stridiron*, 76 V.I. 95, 99 (Super. Ct. 2022); *see also* 4 V.I.C. § 123(a)(6). This Court, presiding over an

---

[5] As none of the parties raised Superior Court Rule 37, the Court has not addressed it.

*In re: Limetree Bay Comm. Litig. Cases*
Master Case No. SX-2022-MC-00037
**Memorandum Opinion**
Page 16 of 16

2023 VI Super 65

FED action, sits as a magistrate judge. *See Brown v. Brown*, 59 V.I. 583, 587-89 (2013) (*per curiam*).

Even though the FED Actions were counter-designated as complex, which caused them to be referred to

the Complex Litigation Division, *see* V.I. R. Civ. P. 92(d), by statute, FED Actions are still within the

original jurisdiction of the Magistrate Division. *See Brown*, 59 V.I. at 587 (citing *Lehtonen v. Payne*, 57

V.I. 308, 312 (2012); *H&H Avionics, Inc. v. V.I. Port. Auth.*, 52 V.I. 458, 461-63 (2009) (*per curiam*)).

So, the Appellate Division of the Superior Court must hear any appeals.

### III. CONCLUSION

¶23     For the reasons given above, the Court rejects the Staff Master's recommendation to strike the

counter-designations, to deny the motions to substitute, and to return the FED Actions to the Magistrate

Division.[6] Instead, this Court concludes that the FED Actions must be dismissed and the motions to

substitute and motions to amend the complaints denied as moot. However, the Court will grant Ocean

Point leave to amend its Second Amended Complaint in the Shared Services Case, if it chooses, to include

a claim for restoration of its cottages from Port Hamilton. Appropriate orders will follow in each case.

**DONE and SO ORDERED this** 2nd **day of November, 2023**

**HAROLD W.L. WILLOCKS**
Administrative Judge of the Superior Court

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Court Clerk

Dated: _____ 11/2/2023

---

[6] Ocean Point made an oral motion in court to withdraw the motion to amend the complaint it filed in *Limetree Bay Terminals, LLC v. Donna Ashley*, Case No. SX-2022-CV-00271, on March 1, 2022, because, according to Ocean Point's counsel, Defendant Ashley was not residing in Ocean Point's cottage under Port Hamilton, but under Pinnacle Services, LLC. However, in her answer, Ashley alleged that "she is in actual possession as a tenant of PHRT . . . ." (Ans. ¶ B, filed July 20, 2022, *Limetree Bay Terminals, LLC v. Ashley*, Case No. SX-2022-CV-00271. The parties later stipulated to withdraw the motion to amend the complaint. Leave of court is not required to withdraw a motion. But more importantly, an attorney's in-court representations cannot defeat an averment in a pleading, particularly representations of the opposing party's attorney.